**United States District Court**
For the Northern District of California

1
2
3
4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7   IN RE MCKESSON GOVERNMENTAL
    ENTITIES AVERAGE WHOLESALE              No. C-09-80170 MISC MHP (JCS)
8   PRICE  LITIGATION
                                            **ORDER GRANTING MOTION TO**
9   _____/       **COMPEL [Docket No. 1]**

10

11  **I.      INTRODUCTION**

12          Defendant McKesson Corporation's Motion to Compel came on for hearing on Friday,

13  October 30, 2009, at 9:30 a.m.  For the reasons stated below, the Defendant's Motion is GRANTED.

14  **II.     BACKGROUND**

15          **A.     The Litigation**

16          On May 20, 2008, the San Francisco City Attorney and the San Francisco Health Plan

17  ("SFHP") filed suit against Defendant McKesson alleging violations of various statutes, including

18  the Racketeer Influenced Corrupt Organizations Act (18 U.S.C. §1962) and the California False

19  Claims Act (Cal. Gov. Code § 12651).  The lawsuit is pending in the District of Massachusetts.  The

20  lawsuit involves published prices for brand-name prescription drugs.  In particular, Plaintiffs allege

21  that Defendant McKesson and First Databank ("FDB") entered into a scheme by which the

22  published Average Wholesale Price or "AWP" for prescription drugs was artificially increased from

23  20% to 25%.  Defendant's Motion to Compel ("the Motion") at 4.  Plaintiff alleges that although

24  FDB represented that the published AWP was a weighted average of the list price of the three

25  national drug wholesalers – McKesson, Cardinal Health and AmerisourceBergen – this

26  representation was  untrue.  Instead of constituting an average of the three, FDB's published AWP's

27  were based on McKesson's list prices alone.  *Id.*  According to Plaintiffs, this resulted in the State of

28  California overpaying for over 400 brand-name prescription drugs beginning in August 2001 up

    until the present.  *Id.*  On April 29, 2009, the district court entered a protective order that governs the

**United States District Court**
For the Northern District of California

1    confidentiality of documents produced in the litigation by both parties and nonparties. *See*

2    Declaration of Paul Flum, ¶ 2, Exh. F.

3          In July 2009, Plaintiffs moved to certify the action as a class action comprised of all

4    governmental entities in California including "the State itself." Motion at 3. In support of the class

5    certification motion, the Plaintiff submitted a declaration from its damages expert, who "estimated

6    the damages to be approximately $550 million, 90% of which is attributable to injuries allegedly

7    suffered by California's Medicaid program. CDHCS is the state agency responsible for overseeing

8    and operating California's medicaid program." Flum Decl., ¶ 4

9          In addition, in 1998, Ven-A-Care filed a *qui tam* suit on behalf of California. The Judicial

10   Panel on Multidistrict Litigation transferred that case to the District of Massachusetts to include it as

11   part of that court's AWP MDL litigation. *See In re Pharm Indus. Average Wholesale Price Litig.*,

12   478 F.Supp.2d 164, 170 (D. Mass. 2007). In that case, the State of California filed a complaint-in-

13   intervention (in 2005) "alleging that the manufacturer defendants provided inflated AWP's to FDP,

14   which FDP published and Medi-Cal then used to reimburse providers for certain prescription drugs."

15   Defendant's Motion at 4. According to Defendant, CDHCS "as the state agency responsible for

16   Medi-Cal, has been the focal point for discovery in the Ven-A-Care litigation." *Id.* In response to

17   document requests in that case, CDHCS put over one million documents into a central database that

18   is maintained by Bridge City Legal, and then produced some of those documents to the Ven-a-Care

19   defendants. *Id.* at 5.

20          **B.      The Defendant's Motion to Compel**

21          The Defendant's Motion to Compel arises out of a subpoena that Defendant served on

22   CDHCS for the production of documents, many of which were produced in the related AWP

23   litigation. The subpoena seeks the following documents:

24          Request No. 21: "For each litigation matter, not responsive to Request No. 20, concerning
            AWP or prescription drug reimbursement: (a) All transcripts of depositions of you and Your
25          current and former employees; (b) All exhibits to depositions of you and Your current and
            former employees; and (c) All Documents produced by You in discovery.

26

27   *See* Flum Declaration, Exhibit A at 11.

28

**United States District Court**
For the Northern District of California

1    In response to the subpoena, CDHCS served objections on May 7, 2009. *See* Flum Decl.,

2    Exh. B. CDHCS did not file a motion to quash the subpoena. In response to Request No. 21,

3    CDHCS objected as follows:

4    > DHCS objects to this request on the basis that "all documents produced" is vague,
     > ambiguous and overbroad because some of those documents are defendant-specific or subject

5    > to a protective order that the documents produced can only be viewed in connection with the
     > Ven-A-Care litigation. Without waiving the above objections, due to the volume of materials

6    > and the search required to locate the responsive documents, the burden of producing the
     > materials is overwhelming. Pursuant to Federal Rules of Civil Procedure, Rule 45,

7    > subdivision (c)(3)(A)(iv), DHCS will disclose this information if an appropriate cost-shifting
     > arrangement can be agreed upon. An estimate of the cost obtained from Bridge City Legal is

8    > $10,190. There may be additional costs to the extent other redactions or special treatment of
     > documents is required. DHCS also reserves the right to review the documents and to assert

9    > further objections if necessary.

10   *Id.* at 13-14.

11   According to Defendant, CDHCS indicated in its response to other document requests that it

12   had previously produced in the Ven-a-Care litigation, documents that were responsive to those

13   requests. According to CDHCS, the documents produced in the Ven-a-Care litigation would be

14   produced to McKesson "if an appropriate cost-shifting arrangement can be agreed upon." Flum

15   Decl., Exh. B, Response to Request Nos. 1, 2(e), 5, 7, 10, 14-16 and 19. The parties met and

16   conferred and "agreed that if McKesson gets CDHCS's document production in the Ven-a-Care

17   litigation, most of its requests would be fulfilled." Flum Decl., ¶ 7. CDHCS agrees that the

18   documents produced in the Ven-a-Care litigation "are the subject of the instant dispute." CDHCS's

19   Opposition at 2, *citing* Gorospe Decl., ¶ 3.

20   The dispute, therefore, centers around CDHCS's stated need to re-review all of the

21   documents that were produced in the Ven-a-Care litigation before producing them again in this

22   litigation to Defendant McKesson. CDHCS claims that it needs to conduct this re-review because

23   some of the documents are subject to the deliberative process privilege and other documents contain

24   confidential pricing information, which are trade secrets. *Id.* CDHCS estimates that this review of

25   the entire document production would cost approximately $250,000 and constitutes an

26   overwhelming burden, especially in light of the difficult budgetary times in the State of California.

27   Defendant claims that this review, and related expense, is completely unnecessary because these

28   documents were already produced in another litigation, and any confidentiality concerns may be

3

**United States District Court**
For the Northern District of California

1    ameliorated by an appropriate protective order such as was done at the time of the initial production

2    in the MDL litigation and was also done here in this litigation.[1]

3         In its Motion, Defendant first argues that the documents it seeks are highly relevant given the

4    substantial overlap in subject matter between the two actions.  Fed. R. Civ. P. 26(b)(1).  Defendant

5    next challenges CDHCS's assertion of the deliberative process privilege.  Defendant  argues that

6    CDHCS has waived the deliberative process privilege when it produced the documents pursuant to a

7    protective order in another case.  Defendant argues that even if the privilege has been preserved,

8    these documents are not protected by the deliberative process privilege because CDHCS has not

9    satisfied the requirements for protection from disclosure under the privilege.  Third, Defendant

10   asserts that CDHCS should be required to produce these documents because the deliberative process

11   privilege is a qualified privilege and Defendant's need for the documents at issue outweighs any

12   harm that may be caused by their disclosure.  Finally, Defendant argues that the protective order in

13   the underlying litigation will adequately protect CDHCS's confidentiality concerns.

14        In its Opposition, CDHCS does not argue with Defendant's assertion of relevance or dispute

15   its need for the documents.  Rather, CDHCS argues that it has properly asserted the privilege and

16   has not waived it.  CDHCS argues that it was ordered to produce the documents in the Ven-a-Care

17   litigation; therefore, the ruling requiring it to release privileged information pursuant to protective

18   order does constitute a waiver.  Opp. at 5.  CDHCS also asserts that it only produced deliberative

19   process information and trade secret information under a protective order for use in that litigation

20   only, and to be reviewed by attorneys only.  CDHCS's Opp. at 4-5.  CDHCS argues mainly that the

21   burden of reviewing the entire production again is enormous, both in terms of time and cost.  Citing

22   FRCP 45(c)(3), CDHCS argues that it should not be required to bear such a large cost, given that it

23   is not a party to this litigation.

24

25

26

27

28
     _____

     [1]The protective order in the underlying proceeding entered by Judge Saris on April 29, 2009, is "modeled after and almost identical to the protective order entered in the MDL proceeding." Defendant's Reply at 4, *citing* Flum Decl., Exh. F.

4

**United States District Court**
For the Northern District of California

1    **III.    ANALYSIS**

2         **A.    Waiver**

3         Defendant asserts that CDHCS has waived the deliberative process privilege in two ways:  1)

4    CDHCS failed to assert the deliberative process objection in its initial response to request number

5    21(c) of Defendant's subpoena; and 2)  CDHCS voluntarily produced the documents in another

6    litigation, thereby waiving the privilege.  The Court agrees.

7         In determining whether or not a party has waived a privilege, courts look to the following

8    factors, developed in the context of inadvertent waiver: "(1) the reasonableness of the precautions to

9    prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of discovery;

10   (4) the extent of the disclosure; and (5) the 'overriding issue of fairness.'" *Eureka Financial Corp. v.*

11   *The Hartord Accident and Indemnity Co.*, 136 FRD 179, 184 (E.D. Cal. 1991) (holding that blanket

12   assertion of privilege resulted in waiver where party invoking privilege failed to assert the privilege

13   as to specific documents even after motion to compel was filed and where dispositive motions date

14   was fast approaching).

15        Here, CDHCS failed to assert the deliberative process privilege in its response to Request

16   No. 21 of the subpoena, nor did it file a motion to quash the subpoena on deliberative process

17   privilege grounds.[2]  Rather, CDHCS stated that it reserved the right to raise objections at a later date.

18   Flum Decl., Exh. B at 14 (CDHCS "reserves the right to review the document [sic] and assert further

19   objections if necessary.")  The response did not identify specific documents that were privileged.

20   CDHCS's initial blanket assertion of the deliberative process privilege was clearly insufficient to

21   invoke the privilege in that it failed to identify any specific documents – or even, specific requests –

22   for which CDHCS invoked the privilege.

23        With respect to the second argument, Defendant is correct that CDHCS has already produced

24   these same documents, pursuant to a protective order, in a similar case.  The order "requiring

25   disclosure" of the documents in the Ven-a-Care case cited by CDHCS does not indicate that CDHCS

26   was actually ordered to produce documents.  *See* Ballard Decl., Exh. A, November 5, 2008 order.

27   Defendant points out that the order cited by CDHCS was directed to the U.S. Department of Health

28

---

[2]CDHCS did raise deliberative process as an objection to Requests 5 and 7.  CDHCS also raised this privilege in a blanket general objection.

1    and Human Services and that it pertains to a case *United States of America ex rel. Ven-A-Care of the*

2    *Florida Keys, Inc.*, No. 06-11337-PBS a case to which CDHCS is not a party.  Reply at 2.  Indeed,

3    the Order cited went through specific documents one by one and ordered the United States to

4    produce documents based on, inter alia, the court's application of the limited protections of the

5    deliberative process privilege to these specific documents.  The Court finds that CDHCS provided

6    the documents in the Ven-a-Care litigation voluntarily.  CDHCS voluntarily disclosed the

7    documents without taking reasonable precautions to avoid disclosure of privileged information.  As

8    such, the privilege has been waived.  *See Alpha I, supra* at 290.  CDHCS's cover letter

9    accompanying the document production in that case, purportedly reserving the right to later raise

10   privilege objections in subsequent litigation does not change this analysis.  *See e.g., In re Worlds of*

11   *Wonder Securities Litig.*, 147 F.R.D. 208, 211-12 (N.D. Cal. 1992).

12        The Court finds that CDHCS's deliberative process privilege has been waived with respect to

13   the documents at issue.

14       **B.**     **Assertion of Deliberative Process Privilege**

15        Even if the deliberative process privilege has not been waived, it cannot be sustained based

16   on the showing made by CDHCS.

17         **1.**     **Applicability of FRCP 45(c)(3)**

18        As a threshold matter, CDHCS argues that under Rule 45(c)(3)(A), "privileged and other

19   protected matters" are prohibited from disclosure.  CDHCS's Opp. at 3.  CDHCS argues that this

20   Court should exercise its discretion under Rule 45(c)(3)(B)(i) to deny disclosure of the confidential

21   trade secret and commercial information at issue here.  CDHCS also invokes the protections of Rule

22   45(c)(3)(C), which allows a court to order "reasonabl[e] compensat[ion]." *Id.* at 4.

23        Relying on a case from the Northern District of New York, *Abrams v. General Electric Co.*,

24   1998 WL 52035 (February 2, 1998,  N.D. N.Y.), Defendant argues that CDHCS cannot invoke the

25   protections of Rule 45(c)(3) due to the fact that it failed to file a motion to quash the subpoena.

26   Defendant's reliance on *Abrams* is unpersuasive.  Rule 45(c)(2)(B) provides that a person subject to

27   a subpoena may serve objections (as was done here).  Once objections have been filed, the

28   responding party need only produce documents if ordered by a court on motion.  Rule

    45(c)(2)(B)(ii).  In that case, "the issuing court *may*, on motion, quash or modify the subpoena" if it

1    requires the disclosure of, *inter alia*, trade secret or other confidential information.  Rule (c)(3)(B)

2    (emphasis supplied).  This subsection gives the court discretion to modify or quash a subpoena in

3    order to protect "a person subject to or affected by a subpoena."  *Id.*

### 2.       Overview of the Deliberative Process Privilege

5         The deliberative process privilege has been developed to protect "the decision making

6    processes of government agencies."  *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 150 (1975).  As

7    the Court explained in *NLRB v. Sear Roebuck & Co.*, "the ultimate purpose of this long-recognized

8    privilege is to prevent injury to the quality of agency decisions."  The underlying premise of the

9    privilege is that agency decision-making might be impaired if discussions within the agency were

10   subject to public review, thereby discouraging "frank discussion of legal or policy matters."  *Id.*

11        In order to be protected by the deliberative process privilege, a document must be both

12   "predecisional" and "deliberative."  *Assembly of the State of California v. United States Department*

13   *of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992).  The Ninth Circuit has adopted the D.C. Circuit's

14   definitions of these terms:

> A "predecisional" document is one "prepared in order to assist an
> agency decisionmaker in arriving at his decision," . . . and may include
> "recommendations, draft documents, proposals, suggestions, and other
> subjective documents which reflect the personal opinions of the writer
> rather than the policy of the agency" . . . .  A predecisional document is a
> part of the "deliberative process," if "the disclosure of the materials
> would expose an agency's decisionmaking process in such a way as to
> discourage candid discussion within the agency and thereby undermine
> the agency's ability to perform its functions."

*Id.* (quoting *Formaldehyde Inst. v. Department of Health and Human Services*, 889 F.2d 1118, 1122

(D.C.Cir.1989) (citations omitted)).

Factual material generally is not considered deliberative, but the fact/opinion distinction

should not be applied mechanically.  *Id.* at 921-922.  Rather, the relevant inquiry is whether

"revealing the information exposes the deliberative process."  *Id.* at 921.  Thus, for example, in

*Quarles v. Department of the Navy*, the court held that cost estimates prepared by a special study

team of the Navy which were formulated to assist the Navy in selecting a "homeport" for an

intended battleship ground, fell under the deliberative process privilege.  893 F.2d 390 (D.C. Cir.

1990).  The Court explained:

> cost estimates such as these are far from fixed. . . . They derive from a complex set of judgments  - - projecting needs, studying prior endeavors and assessing possible suppliers.  They partake of just that elasticity that has persuaded courts to provide shelter for opinions generally.

*Id.* at 392-393.  On this basis, the Court declined to order the Navy to produce the full report of the study team.  *Id.*  (The Navy had produced a redacted version which included only the "truly factual information" and omitted all analysis, conclusions and cost estimates).  *Id.*  Even where material in a document is purely factual, it may be protected under the deliberative process privilege if it "is so interwoven with the deliberative material that it is not severable."  *FTC v. Warner Communications, Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984).

Generally, the deliberative process privilege may be invoked only by the agency head after personally reviewing the documents for which the privilege is asserted.  *See United States v. Rozet,* 183 F.R.D. 662, 665 (N.D. Cal. 1998) (citing to *Coastal Corp. v. Duncan,* 86 F.R.D. 514, 516-517 (D. Del. 1980)).  As the court explained in *Coastal Corp.,* "[t]hat requirement was designed to deter governmental units from too freely claiming a privilege that is not to be lightly invoked . . . by assuring that some one in a position of high authority could examine the materials involved from a vantage point involving both expertise and an overview-type perspective."  *Id.* at 517.  The requirement that the privilege be invoked by the agency head need not be applied absolutely literally.  *Id.* at 517-518.  However, the duty to invoke the privilege cannot be delegated so far down the chain of command that purposes of the requirement are undermined.  *Id.*

The deliberative process privilege is not absolute.  *FTC v. Warner Communications, Inc.,* 742 F.2d 1156, 1161 (9th Cir. 1984).  Even if the deliberative process privilege applies, a litigant may obtain discovery of protected material if the need for the documents outweighs the governmental interest in keeping the decision making process confidential.  *Id.*  "Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions."  *Id.*

Finally, the privilege "must be strictly confined within the narrowest possible limits consistent with the logic of its principles."  *K.L. v. Edgar*, 964 F. Supp. 1206, 1208 (N.D. Ill. 1997)

United States District Court

For the Northern District of California

8

**United States District Court**
For the Northern District of California

1   (citations omitted); *see also United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998) (stating

2   that deliberative privilege is "narrow privilege" which should not be "indiscriminately invoked").

### 3.    Application of the Deliberative Process Privilege

4   CDHCS has not provided privilege logs listing the documents for which they assert the

5   deliberative process privilege.  In fact, CDHCS does not address any specific documents in their

6   Opposition.  Instead CDHCS makes a generalized objection, arguing that "in the Ven-A-care

7   litigation, documents reflecting internal discussions and analysis by DHCS were the subject of

8   discovery."  Opp. at 4.  This is insufficient.  *See e.g., Alpha I, L.P. v. United States*, 83 Fed.Cl. 279,

9   290 (Fed. Cl. 2008) ("Defendant's prior assertion of the privilege with respect to documents

10  previously requested by plaintiffs . . .does not sufficiently address the circumstances of this case.

11  Nor are declarations filed in other cases sufficient to support defendant's prior assertions of the

12  deliberative process privilege.  Defendant has not stated with particularity exactly what information

13  sought by plaintiffs' request for deposition testimony is privileged . . .") (internal citations omitted).

14  In order to invoke the privilege, there are several requirements, none of which is met here.

15  For example, CDHCS should have provided a declaration from an agency head that includes the

16  following information with respect to each document for which the deliberative process privilege is

17  asserted: 1) specific facts demonstrating why each document is "deliberative" and "predecisional";

18  2) specific facts concerning: a) the degree and type of harm that would result from requiring

19  production of each document; and b) what type of protective order would be necessary to reduce that

20  harm or, alternatively, why a protective order would not reduce this harm; and 3) what portions of

21  each document are deliberative and, if specific sections are purely factual, why those sections cannot

22  be produced.  Without this information, the Court cannot determine whether the documents at issue

23  are deliberative or predecisional.  Nor can the Court adequately assess the harm that would result if

24  production is ordered.  *See e.g., L.H. v. Schwarzenegger*, 2008 WL 2073958, *7 (E.D. Cal. May 14,

25  2008 (finding waiver of deliberative process privilege where no declarations supporting privilege

26  were filed).

27  CDHCS argues that it should not be required to meet its burden due to the enormous cost of

28  the document review in this case.  CDHCS argues that it, as a state agency, should not be compelled

to conduct a document review at its own expense in order to satisfy its burden to demonstrate that

**United States District Court**
For the Northern District of California

1    certain documents are privileged.  CDHCS cites no authority for the proposition that a state agency

2    can avoid its initial burden to satisfy the requirements for invoking the deliberative process privilege

3    simply by arguing financial burden.

4         The burden of articulating the basis for the assertion of the deliberative process privilege is

5    with the party asserting the privilege.  *Alpha I, supra* at 288 ("the party seeking to invoke the

6    deliberative process privilege has the burden of justifying its application.").  CDHCS has not met its

7    burden.[3]

8         **C.    Confidentiality Concerns**

9         As an initial matter, the Court is not convinced that the materials produced in the Ven-a-Care

10   litigation, and now sought by Defendant here, are as sensitive as CDHCS suggests.  For example,

11   CDHCS admits that the documents produced in the Ven-a-Care litigation are last least five years

12   old; therefore, any pricing information contained within these documents is outdated at this point.

13   Flum Decl., Exh. C, e-mail from counsel for CDHCS Brenda Ray to counsel for Defendant

14   McKesson, dated June 5, 2009 ("The Ven-A-Care matter collected documents from 1985 through

15   2006 into a central database at Bridge City Legal, but documents produced were only for the period

16   1994-2004.")

17        CDHCS also has failed to explain why a protective order limiting disclosure of these

18   documents would not eliminate any harm that might result from ordering their production.  The

19   Court finds that the protective order that is currently in place, will sufficiently protect CDHCS's

20   interests.  *See Price v. County of San Diego*, 165 F.R.D. 614, 620 S.D. Cal. 1996) (concluding that

21   documents at issue should be produced and noting that "the infringement upon the frank and

22   independent discussions regarding contemplated policies and decisions by the County . . . can be

23   alleviated through the use of a strict protective order").

24        Pursuant to that protective order, a party (or nonparty) may designate documents either

25   "confidential" or "highly confidential" (also referred to as "attorney's eyes only").  The latter

26   designation, specifically includes "trade secrets" and "current and past . . .methods, procedures, and

27   ────────────────

28        [3]This is a particularly apt conclusion in light of the next issue that the Court would have to address if the privilege applied: Whether Defendant's need for the documents outweighs the harm that would result from their disclosure.  The Court cannot even begin to assess this issue in light of the CDHCS's failure to assert properly the deliberative process privilege.

**United States District Court**
For the Northern District of California

1  processes relating to the pricing of pharmaceuticals." Flum Decl., Exh. F, Protective Order at 2-3.

2  The protection is sufficient.

3      In addition, the Court agrees with Defendant's proposal of the procedure utilized by the court

4  in *Tessera, Inc. v. Micron technology, Inc.*, No. C-06-80024-MISC-JW (PVT), 2006 U.S. Dist.

5  LEXIS 25114 (N.D. Cal., March 22, 2006). There, the court: 1) ordered the documents produced

6  with the designation, "Confidential – Outside Attorney Eyes Only"; and 2) imposed on the

7  subpoenaing party the burden of notifying third parties and obtaining their permission to use

8  documents that were produced. *Id* at *25-26. The Court finds that the procedures used by the court

9  in *Tessera* resolve CDHCS's confidentiality concerns.

10      **D.      Financial Burden**

11      In addition to the enormous cost of re-reviewing the documents for privileged

12  communications, CDHCS argues that it should not be required to pay for the production costs. The

13  Court has rejected CDHCS's first argument, concluding that: 1) CDHCS cannot avoid a review of

14  relevant documents for privilege by arguing burden and 2) no such re-review is required given that

15  CDHCS has waived the privilege when it voluntarily produced the documents in another litigation.

16  With respect to the second argument, however, the Court agrees. The Court therefore orders

17  Defendant McKesson to pay for the costs charged by Bridge City Legal of copying and producing

18  the documents in electronic form.

19  **IV.    CONCLUSION**

20      For the reasons stated above, the Court GRANTS Defendant's Motion to Compel with

21  respect to all documents produced in the Ven-a-Care litigation. CDHCS shall produce those

22  documents on or before Friday November 13, 2009. All such documents shall be confidential

23  pursuant to the April 29, 2009 Protective Order, shall be disclosed as "Confidential – Attorney's

24  Eyes Only" and shall not be used in a deposition or other proceeding without permission from the

25  competitive entities, or further Order.

26  //

27  //

28  //

In addition, Defendant is ordered to pay for the costs of duplication and production.

IT IS SO ORDERED.

Dated: November 4, 2009

_____
JOSEPH C. SPERO
United States Magistrate Judge

**United States District Court**
For the Northern District of California